**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Alberto Rodriguez,<br><br>Plaintiff,<br><br>v.<br><br>The United States; The Department of Homeland Security; United States Customs and Border Protection; William K. Brooks as Director of Field Operations, Tucson Field Office, U. S. Customs and Border Protection; Jason West as Acting Port Director at Phoenix Sky Harbor International Airport, U. S. Customs and Border Protection; Heather Froese, as Assistant Port Director Phoenix Sky Harbor International Airport, U. S. Customs and Border Protection; Kimberly Kros, as Supervisory Officer, U. S. Customs and Border Protection; Todd C. Owen, as Assistant Commissioner of Office of Field Operations, U. S. Customs and Border Protection; Kevin K. McAleenan as Acting Commissioner of U. S. Customs and Border Protection; Elaine Duke, as Secretary of the Department of Homeland Security,<br><br>Defendants. | No. CV-17-01200-PHX-NVW<br><br>**ORDER** |

Before the Court is the Government's Motion to Dismiss. (Doc. 30.) (The defendants, all federal officials sued in their official capacity, will be referred to as the Government or Customs.) After that Motion was filed, the Court ordered the Government to show cause why judgment on the pleadings should not be entered in Plaintiff's favor (Doc. 34), to which the Government responded (Doc. 36).

## I. BACKGROUND

### A. Factual Background

Plaintiff Alberto Rodriguez ("Rodriguez"), a United States citizen domiciled in Phoenix, Arizona, brought this action for judicial review when United States Customs and Border Patrol ("Customs") denied his application for a security clearance in 2016. (Doc. 1.) Rodriguez needed the clearance for his continued employment as a baggage handler for American Airlines at Phoenix Sky Harbor International Airport. Upon denial of his application, he lost his employment of eight years.

On September 9, 2011, Rodriguez drove from Arizona to California for a friend's birthday party. (Doc. 17 at 3, ¶ 23.) Two friends, including Joel Sanchez, were in the car. (*Id*.) Soon after the group crossed into California, Customs officers pulled them over. (Doc. 1-1 at 1.) The three friends were detained without explanation. (*Id*.) Rodriguez was held for six to seven hours, and his car was impounded. (*Id*.) He was released that day, not charged with any crime, and told he would not be charged with any crime. (*Id*.)

Sanchez was also released, but it turns out he was in the country illegally. According to Customs, Sanchez was "subsequently issued a Notice to Appear in immigration court and deported." (Doc. 32-2 at 1.) Rodriguez believed "Sanchez had lived in the United States since he was a baby" and "was in the process of obtaining lawful status through his sister." (Doc. 1-1 at 1.) He also believed Sanchez "had a document from U.S. Immigration to prove he was in process" and an Arizona driver's license. (*Id*.) Rodriguez states his "only intent was to go to California to visit a friend for

the weekend and return to Arizona"; he "had no intent to help Joel Sanchez violate any immigration laws." (*Id.*)

Four years after the events in California, Rodriguez applied for a security clearance. This was the first time he had to apply for such a clearance through Customs, though he had worked in the same position with American Airlines since 2008 based on clearances issued by the City of Phoenix, which operates the airport. As explained at the August 22, 2018 oral argument, Customs had recently decided to issue security clearances itself for airport employees who accessed areas of international flights. Because his work included access to such areas, the airline and he sought such clearance for Rodriguez.

On September 10, 2016, his application was denied pursuant to 19 C.F.R. § 122.183(a). (Doc. 1-2.) The following was the entirety of the explanation provided:

> On or about September 9, 2011, you were arrested by United States Border Patrol agents near Blyth, California as a driver of vehicle carrying one illegal alien. This is a violation of 19 CFR 122.183(a)(4)(xxxiv), "Any violation of a U.S. Immigration law,...." This is reason for denial.

(*Id.*)

Section 122.183(a) says Customs will not grant a security clearance "to any person whose access to the Customs security area will, in the judgment of the port director, endanger the revenue or the security of the area or pose an unacceptable risk to public health, interest or safety, national security, or aviation safety." It then lists specific examples of bases for denial, including "a disqualifying offense committed by the applicant." *Id*. An "applicant commits a disqualifying offense if the applicant has been convicted of . . . or has committed any act or omission involving" a disqualifying offense. *Id*. One of the listed disqualifying offenses is any "violation of a U.S. immigration law." *Id.* § 122.183(a)(4)(xxxiv).

Rodriguez retained counsel to handle an administrative appeal. (Doc. 17 at 6, ¶ 27.) His attorney tried to identify a statute that Rodriguez could have violated. (Doc. 1-3.) He argued in the appeal letter that no statute applied because there was no evidence

or probable cause to think the travel with friends was in furtherance of an immigration offense by his friend. There was no basis to think Rodriguez had the *mens rea* to have committed any crime. (*See id.* at 1-2.)

The Acting Port Director, Jason West ("West"), denied Rodriguez's appeal on October 7, 2016. (Doc. 1-4.) He "decided, within my discretion," that granting Rodriguez "access to [Customs] Security areas" would, in the conclusory language of the regulations, "endanger the revenue or the security of the area or pose an unacceptable risk to public health, interest or safety, national security or aviation safety." (*Id*.) His letter parroted the words of the regulation but still did not say what law Rodriguez had violated. (*See id*.)

On his further appeal, Rodriguez submitted a three-page, single-spaced letter that developed earlier arguments and added new ones, including that the refusal to consider the facts and arguments presented was an abuse of discretion. It could also be taken as a demand that the agency exercise discretion. (Doc. 1-5.)

In a three-sentence letter, the Director of Field Operations denied the appeal with no explanation:

> I am in receipt of your letter requesting that I vacate the Port Directors [*sic*] decision and clear Mr. Rodriguez to access the [Customs] Security Area, Zone 2 at the Phoenix Sky Harbor International Airport. I am unable to facilitate your request at this time. I fully support the decision of the Port Director, Phoenix Sky Harbor International Airport.

(Doc. 1-6.)

Rodriguez's administrative appeals options were exhausted. This action for judicial review followed.

**B.  First Motion to Dismiss**

Rodriguez's Complaint sought "mandamus to compel an evidentiary hearing, a declaratory judgment that § 122.183(a) is unconstitutionally vague, instructions on procedures constitutionally required in the administrative proceeding, judicial review of final agency action under the Administrative Procedure Act, and remand under the

Administrative Procedure Act for failure to follow the agency's own regulations." (Doc. 28 (citing Doc. 1).) The Government moved to dismiss all claims. (Doc. 22.)

The Court dismissed all claims except the claim for remand for violation of the Administrative Procedure Act. The Act does not authorize substantive judicial review of action committed to agency discretion by law. (*Id.* at 10-11.) But even for such action, the Administrative Procedure Act provides for judicial review of agency action found to be made "without observance of procedure required by law." 5 U.S.C. § 706(2)(D). Under *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954), "procedures required by law include an agency's own regulations and internal operating procedures, even for substantive decisions committed to discretion." (Doc. 28 at 6.) *Accardi* dealt with action expressly committed to agency discretion but still remanded for failure to exercise the discretion required by the regulations. 347 U.S. at 268.

19 C.F.R. § 122.183(b) requires that an applicant denied a clearance for Customs security areas be given written notice "fully stating the reasons for denial." The regulation bars reporting those reasons to the applicant's employer, but it also says that Customs will inform the employer "that the *detailed reasons* for the denial have been furnished to the applicant." *Id.* (emphasis added).

In *Cheney v. Department of Justice*, 479 F.3d 1343, 1352 (Fed. Cir. 2007), a case the Government says applies here, the court interpreted a statute requiring the agency to provide "written notice . . . stating the specific reasons" for suspension of a security clearance. The court explained that "the employee must be given enough information to enable him or her to make a meaningful response to the agency's proposed suspension of the security clearance." *Id*. That was not done for the plaintiff in *Cheney*. "The notice of suspension also stated that Mr. Cheney had 'failed to comply with security regulations' and that he had 'demonstrated a pattern of dishonesty and/or rule violations.' We fail to see how Mr. Cheney could have made a meaningful response to such broad and unspecific allegations when there was no indication of when his alleged conduct took place or what it involved." *Id*. "While Mr. Cheney was told, in general terms, the

reasons for the suspension of his security clearance, he was not given the allegations that supposedly supported those reasons so that he could make a meaningful response to the proposed suspension." *Id.* at 1353. "For example, he was not told what the nature of his alleged derogatory personal conduct was. Neither was he told what laws and [] standards of conduct he had violated." *Id*. Had the agency provided him "with that information, considered his response to the charges against him, and then suspended his security clearance," there could be no judicial review of the substantive determination. *Id*.

The *Cheney* case does apply here, but it is against the Government. The September 10, 2016 letter denying Rodriguez his security clearance did not point to any law Rodriguez had violated and did not "fully stat[e] the reasons for denial." It therefore did not allow for "meaningful response" and forced Rodriguez to guess what law he had supposedly violated. Rodriguez stated an *Accardi* claim, and the motion to dismiss was denied.

The Court also focused on two obvious holes with respect to the denial letter and the "detailed reasons" that must be given for denial. First, no statute imposes strict liability for transporting undocumented aliens. If done with knowledge or "in reckless disregard of the fact" that an alien "has come to, entered, or remains in the United States in violation of the law," it is a crime to transport the undocumented alien "in furtherance of such violation of law." 8 U.S.C. § 1324(a)(1)(A)(ii). The "in furtherance" element, like the rest of that penal statute, is "strictly construed"; "there must be a direct or substantial relationship between [] transportation and its furtherance of the alien's presence in the United States." *United States v. Moreno*, 561 F.2d 1321, 1323 (9th Cir. 1977). "A broader interpretation of the transportation section would render the qualification placed there by Congress a nullity. To do this would potentially have tragic consequences for many American citizens who come into daily contact with undocumented aliens and who, with no evil or criminal intent, intermingle with them socially or otherwise." *Id*. "Thus, given the facts recounted above, Customs's notice to Rodriguez could not sensibly have been referring to § 1324(a)(1)(A)(ii)." (Doc. 28 at 8.)

Mere social travel with people believed to be regularizing their doubtful presence in the country, as innumerable people are doing, is not by any stretch a crime.

In addition, it is patently groundless to say that § 122.183(a) applies here because the applicant "has committed any act or omission involving" a disqualifying offense or that there is evidence of an investigation "establishing probable cause to believe that the applicant has engaged in any conduct" that could lead to conviction for a disqualifying offense. The September 10, 2016 letter did not say that Rodriguez committed an act or omission or that there was probable cause to believe he had engaged in conduct that could lead to a conviction for a disqualifying offense. That contention is foreclosed by failure to include it in the "detailed reasons" for the denial. The letter said Rodriguez was arrested for violating immigration law, not because there was probable cause to think he violated the law. Customs may deny a clearance only for the reasons it gives. Those reasons must be detailed. 19 C.F.R. § 122.183(b). An applicant is not required to rebut every possible ground for denial that Customs did not invoke. (Doc. 28 at 9.)

The Administrative Procedure Act's exemption from substantive review of actions committed to agency discretion by law still requires agencies to follow their own regulations about how they take such action. 19 C.F.R. § 122.183(b) requires a written statement fully stating the reasons for denial and "detailed reasons" about how and why discretion was exercised, not only to show how discretion was exercised but also to show it *was* exercised. Neither that regulation nor the Administrative Procedure Act authorizes a black hole of secrecy to hide arbitrary action or failure to exercise discretion.

### C. Customs's Second Denial Letter and Second Motion to Dismiss

Not satisfied with its action once it was sued and after denial of the Government's motion to dismiss, Customs sent Rodriguez a second letter purporting to deny his clearance again, though no application was then pending. (Doc. 30 at 2; Doc. 30-1 at 2.) The letter was misdated "June 19, 2016," but Customs says it was sent on June 20, 2018. The June 20, 2018 letter was written by Acting Port Director West, who had denied the first appeal of the September 10, 2016 denial letter. (Doc. 30-1 at 3.) The June 20, 2018

letter purports to relate back to Rodriguez's 2016 clearance application and to incorporate all of Rodriguez's "subsequent submissions"—apparently meaning his submissions in court. (*Id.* at 2.) It asserts, "On or about September 9, 2011, you were arrested . . . as the driver of a vehicle carrying an illegal alien. You were arrested for the transportation of an illegal alien in violation of 8 U.S.C. § 1324(a)(1)(A)(ii)." (*Id.*) West ultimately concludes, without explanation, "Upon review, I have determined that you violated 8 U.S.C. § 1324(a)(1)(A)(ii)." (*Id.*) Customs apparently took the Court's words as a blueprint for evasion. Indeed, the letter also asserts that the "investigation into the events surrounding [Rodriguez's] September 9, 2011 offense established probable cause to believe [he] engaged in the conduct relating to or that could lead to conviction for having violated 8 U.S.C. § 1324(a)(1)(A)(ii)." (*Id.*) The letter further remarks that "it is the judgment of the Port Director" that granting Rodriguez a clearance would "endanger the revenue or the security of the area or pose an unacceptable risk to public health, interest or safety, national security, or aviation safety." (*Id.* (quoting 19 C.F.R. § 122.183(a).)

The Government again moved to dismiss this action, arguing the second letter complied with Customs's regulations and therefore mooted the case. (Doc. 30 at 2-3.) The Court extended the time for Rodriguez to respond to the motion until he was able to exhaust his appeals of the new letter. (Doc. 31 at 2.) On June 28, 2018, Rodriguez timely appealed the second denial. (Doc. 32-1 at 3.)

### D. Customs's Third Denial Letter

But Customs again moved the goalpost. On June 28, 2018, West sent a third denial letter. (Doc. 32-2 at 1-2.) The June 28, 2018 letter bolsters the June 20, 2018 letter without acknowledging the earlier letter's existence. In addition to the items in the second letter, the third letter asserts for the first time that Sanchez was deported. (*Id.* at 1.) It also states that Customs has come to learn that Rodriguez is no longer employed by American Airlines. (*Id.*) Applications for a security clearance "must be supported by a written request and justification for issuance prepared by the applicant's employer that

describes the duties that the applicant will perform while in the Customs security area." (*Id.* (quoting 19 C.F.R. § 122.182(c)(1).)

This Court then entered an order to show cause, superseding the earlier scheduling order. The Court noted that the third letter (and necessarily the second letter also) may have been procedurally improper. (Doc. 34 at 2.) 19 C.F.R. § 122.183(c) states that denials are "final" unless the applicant appeals. Nothing in the regulations suggests that the finality is not binding on Customs. (Doc. 34 at 2.) Further, the rule implicitly depriving a lower tribunal of jurisdiction to modify a matter on appeal is necessary to prevent lower tribunals from disrupting appellate review by changing and bolstering their rulings. Otherwise, a lower agency could force an ongoing dialectic on the reviewing tribunal to meet the agency's shifting positions. (*Id.* at 3.) The Court also noted the absurdity of lack of employment as a basis for denial of a security clearance, as that lack of employment was caused by Customs's denial of the application. (*Id.*) Finally, neither the second nor the third letter explained *how* Rodriguez had violated 8 U.S.C. § 1324(a)(1)(A)(ii) or did anything more than parrot the language of the regulations, disconnected from any particular facts related to Rodriguez. (*Id.*)

Given the substantial delays in the case and in the interest of economy, the Court vacated its earlier scheduling order. (*Id.* at 3-4.) Because the case presents a pure question of law, the Court ordered the Government to show cause why judgment on the pleadings should not be entered in Rodriguez's favor. (*Id.* at 4.)

**II.   ANALYSIS**

    **A.   Rodriguez is entitled to judgment on the pleadings against the September 10, 2016 denial because he did not receive a written notice fully stating the reasons for denial or detailed reasons for the denial of his security clearance.**

The Government concedes that judgment on the pleadings is appropriate "should the Court determine that the agency did not follow its own regulation." (Doc. 35 at 8.) The Court so determines, and judgment will be entered in Rodriguez's favor.

19 C.F.R. § 122.183(b) requires a written notice "fully stating the reasons for denial" and that "detailed reasons for the denial [be] furnished to the applicant." "Detailed" means "[r]elated, stated, or described circumstantially; abounding in details; minute, particular, circumstantial." The Compact Oxford English Dictionary 421 (2d ed. 1991).

Customs's September 10, 2016 letter violated *Accardi* because it was neither full nor detailed in any sense. The letter is not "abounding in details" or "minute, particular, circumstantial." It does not even say what law Rodriguez violated. In fact, it implies something wholly contrary to law: that it is a strict-liability crime to be the driver of a vehicle carrying an undocumented alien. As discussed above, such a contention would be wrong as a matter of clearly established law. *Moreno*, 561 F.2d at 1323.

The letter does not allow for meaningful response. *Cheney*, 479 F.3d at 1352. To allow for meaningful response, the agency must supply some basis for its decision—a basis for actual dialogue with the applicant. Here, Rodriguez was forced to guess what law he violated and why Customs believed he violated it. Such a letter does not allow for a meaningful response from Rodriguez or an actual dialogue with the agency's reviewing officials.

Rodriguez is entitled to the remedy described below. As will now be discussed, the illegal and insufficient subsequent denial letters do not change this conclusion.

**B. The June 20, 2018 and June 28, 2018 denial letters were procedurally improper.**

After receiving this Court's adverse ruling on the motion to dismiss, Customs undertook on its own to send Rodriguez a second and a third denial letter. The Government claims the letters moot the case. But the letters were illegal attempts to redetermine a matter no longer within the jurisdiction of the agency.

19 C.F.R. § 122.183(c) states Customs's "denial will be *final* unless the applicant files with the port director a written notice of appeal within 10 days following receipt of the notice of denial" (emphasis added). If the applicant does appeal, the decision on

appeal is final. 19 C.F.R. § 122.183(d). Nothing in the regulations suggests that the finality is not binding on Customs. (Doc. 34 at 2.)

Rodriguez's 2016 application for a security clearance was denied. He exhausted his administrative appeals, and then he filed this action for judicial review. Customs's denial of Rodriguez's application was final upon the exhaustion of his administrative appeals. The regulations do not allow Customs to issue a new finding or determination reaffirming the same denial in a closed matter.

The second and third letters are improper even apart from the clear language of 19 C.F.R. § 122.183(c). As the Supreme Court has observed, "The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982). More broadly stated, when an appeal is taken of a lower body's decision, the lower body is not able to modify or add to its original decision. This rule implicitly depriving a lower tribunal of jurisdiction to modify a matter on appeal is necessary to prevent lower tribunals from disrupting appellate review by changing their rulings. Otherwise, a lower agency could force an ongoing dialectic on the reviewing tribunal to meet the agency's shifting positions. (Doc. 34 at 3.) That principle has analogous force in this situation of judicial review of agency action. But the literally dispositive point here is that the regulation does not allow for iterative denials of agency action already denied and final by the express terms of the regulation.

The Government argues that "although district courts are stripped of jurisdiction to render new determinations when a matter has been appealed to the Court of Appeals, agencies are not implicitly barred from taking steps to resolve an administrative complaint during the pendency of litigation." (*Id.* at 2.) But Customs did not "resolve an administrative complaint during the pendency of litigation." It denied the administrative complaint, again and yet again, attempting to thrust new reasons and facts into a closed administrative record to win a pending judicial review. Both Customs's regulation and

- 11 -

common standards of appellate review barred it from rendering new adverse determinations on a final decision now pending on review in this Court. Indeed, the Government claims there is no limit to its ability to keep reaffirming its agency action for new reasons and facts, forcing those new reasons and facts into the consideration of this and other reviewing courts. At the August 22, 2018 oral argument, the Government contended Customs could keep doing so even in the Court of Appeals.

The Government cites cases purporting to show that "agencies often act on a Plaintiff's administrative claim even after a suit has been filed in federal court." (*Id*.) The cases fall into two categories: (1) the agency later released the documents requested under FOIA or (2) the agency provided a hearing it had previously denied. (*Id.* at 3 (collecting cases).) The common thread is that the agencies changed their positions to grant the plaintiff the relief originally denied.[1] Here, Customs has not changed its position. All it has done is put forth more illegal, self-serving denial letters—letters that could not be considered as new grounds to affirm its first denial of relief, even if the new decisions supplied valid grounds for the original denial. In short, an agency can sometimes cave in later, but it cannot double down on an illegal denial of relief.

Both the second and third denial letters purport to be on restated final agency denial of review, not on initial denial that could be a basis for response by Rodriguez and dialogue. For that reason too, even if the reasons later stated were sufficient on their face, the later letters preclude the very response and dialogue the statement of detailed reasons is meant to enable. That too invalidates the second and third denial letters.

---

[1] The Government again cites a case that refutes its own argument. In *Papa v. United States*, 281 F.3d 1004, 1013 (9th Cir. 2002), the Court of Appeals explained that an agency that refused FOIA documents could relent during judicial review and produce the withheld documents. That case did not hold an agency could issue a new refusal of production during judicial review and crowbar the new reasons and facts into the pending judicial review. And even in that case of acquiescence during pending litigation, the case for judicial review was not mooted because it remained debatable whether all the documents sought had been produced. *Id*.

## C. The second and third denial letters violate Customs's regulations by failing to provide full and detailed reasons for denying Rodriguez's security clearance.

Even if the second and third letters were not procedurally invalid, they still violate *Accardi* by not providing full and detailed reasons for denial of Rodriguez's application.

### 1. The June 20, 2018 letter does not state full and detailed reasons for denial.

The Government contends in its second motion to dismiss that Customs's second denial letter (sent June 20, 2018) has mooted the case by providing "more specific explanation of the reasons for the denial" of the security clearance. (Doc. 30 at 3.) Although the second letter has more words, it is not full, specific, or detailed.

The second letter states three supposed bases for denial: (1) in the Port Director's judgment, granting Rodriguez a clearance will "endanger the revenue or the security of the area or pose an unacceptable risk to public health, interest or safety, national security, or aviation safety"; (2) "there is evidence of a pending or past investigation establishing probable cause to believe that [Rodriguez] engaged in any conduct that relates to, or which could lead to a conviction for, a disqualifying offense," and "[u]pon review, [West] determined that the investigation into" the events in California established probable cause; and (3) Rodriguez "committed a disqualifying offense" by violating 8 U.S.C. § 1324(a)(1)(A)(ii) and "[u]pon review, [West] determined that" Rodriguez violated that statute. (Doc. 30-1 at 2.)

None of these reasons is detailed. They mirror the language of the regulation; they are not "abounding in details" or "minute, particular, circumstantial." They are conclusory. The broad assertion that Rodriguez poses a threat to national security is unsupported and non-specific. In addition, West states that upon his review—he does not say what the review entailed—Rodriguez may have violated or did violate § 1324(a)(1)(A)(ii). West provides no way for Rodriguez to understand why he believes Rodriguez had the *mens rea* necessary to violate the statute—a requirement that is strictly

construed. *Moreno*, 561 F.2d at 1323. And probable cause requires reason to believe every element of a crime is satisfied, which West does not claim.

Customs's lack of candor is especially pronounced in this case. The Court explained in a previous order that it was unclear how Rodriguez could have violated § 1324(a)(1)(A)(ii). Customs was therefore on notice that a bare conclusion not suffice as full and detailed reasons.

Moreover, West swears in a declaration that the "process of receiving, documenting, vetting, setting appointments for interview or prints, approving and denying applications is done with attention to detail, is very well documented, and is done with a humane approach." (Doc. 24-2 at 2.) This claim of thoroughness sheds no light on the completely opaque "reason" actually given in this case.

A denial letter needs to be detailed in a way that allows Rodriguez to meaningfully respond. *Cheney*, 479 F.3d at 1352. The Government acknowledges *Cheney* applies but contends Customs is not required to "spell out all the specific inferences it drew to make its final determination." (Doc. 36 at 5 (quoting *Oryszak v. Sullivan*, 565 F. Supp. 2d 14, 22 (D.D.C. 2008).) It argues "neither the regulations nor case law requires the agency to more explicitly detail or prove up the criminal case for which [Rodriguez] was arrested, or to prove up probable cause." (*Id*.) But Customs's violation of its own rules is not for failure to "spell out all the specific inferences it drew." Its violation was in its failure to spell out *any* inference to meet essential elements of the crime. The violation further lay in the failure to give full and complete reasons.

In *Oryszak*, the court remarked, "With no judicially manageable standards for review, this Court cannot judge how and when an agency should exercise its discretion, much less determine whether that discretion has been abused." 565 F. Supp. 2d at 20. There is an easily manageable standard in this case: Customs's own regulation, 19 C.F.R. § 122.183(b). By failing to provide any reason related to Rodriguez's actual circumstances, Customs's second letter was neither full nor "detailed." It therefore does not comply with § 122.183(b).

## 2. The June 28, 2018 letter does not state full and detailed reasons for denial and was also in bad faith.

The Government contends it was lawful for Customs to provide a third denial letter because the agency had learned of new material information—namely, that Rodriguez was no longer employed by American Airlines. (Doc. 36 at 2.) 19 C.F.R. § 122.182(c)(1) requires applications for security clearances "be supported by a written request and justification for issuance prepared by the applicant's employer," as Rodriguez's application was when presented and when denied. Customs maintains in its third letter that it has come to learn that Rodriguez no longer has an employer to supply this required written request. (Doc. 32-2 at 1.) The Government asserts that it is not clear from the record what caused Rodriguez's termination. (Doc. 36 at 5-8.)

This contention is in utter bad faith on the part of Customs and the Government, in two separate dimensions. Customs knows full well that the denied security clearance was necessary to Rodriguez's job. That is why the airline supported Rodriguez's application—so he could continue his job of eight years once Customs decided to require its own clearance for workers to access international flight areas. To say two years later that Customs has only lately come to learn Rodriguez no longer has the job with American Airlines is unworthy of belief, and to say it in court falls far short of permissible advocacy.

The additional dimension of bad faith is that Customs's unlawful denial of Rodriguez's clearance is exactly what caused Rodriguez to lose his job, as the Government knew and intended. One hesitates to use strong language, but it is breathtaking for the Government to rely on its own illegal action to deprive a citizen of his right to overturn the illegal action precisely because it harmed him. The review in this Court turns on the matter as it was in the agency when the error was committed. Rodriguez had employment with the airline at that time. The absurdity of the Government's contention is that it would always prevent judicial correction of illegal denial of a security clearance that is necessary to keep a job.

In sum, the second and third denial letters supply no basis for meaningful dialogue with the agency. They violate the agency's regulations.

### D. Rodriquez is entitled to invalidation of the unlawful denial of security clearance and fresh action on remand in full compliance with Customs's legal duties.

Having suffered from illegal agency action, Rodriguez is entitled to fresh exercise of such discretion as the agency has. It is not enough for Customs to say that substantive error or abuse of discretion would be immune from judicial correction, so we will preemptively indulge in any error or abuse of discretion we like. Very little of what the Government does is subject to correction by the courts. But every federal official is sworn to uphold the Constitution and the laws of the United States. Even if the courts cannot later intervene, it is the oath of every official—every single one—to diligently follow the law and apply it in fairness and good faith to the best of his ability to every person affected by the official's acts. If, as appears certain here, there is no basis or even probable cause to think Rodriguez committed an immigration offense, Customs must examine that and fully state the "detailed reasons" for concluding he did, showing that Customs is not acting in defiance of law and facts. Everyone is entitled to open-minded, thorough fact-finding and real exercise of discretion where discretion is granted, even those who have previously shown the Government's action was illegal.

### E. It is an open question whether the security decision in this case is committed to agency discretion by law.

The Court does not decide the important question of whether the security decision in this case is "committed to agency discretion by law" within the exception of the Administrate Procedure Act from substantive judicial review. The question is substantial in light of the Government's inability to point to any statute or specific case so holding. (*See* Doc. 35.) The question could arise in further proceedings, but it is not necessary to decide it now.

### F. Attorney fees under the Equal Access to Justice Act will be denied.

After Customs's lawless attempts to deny again the closed clearance application, Rodriguez filed a motion for contempt, arguing those actions were in bad faith. (Doc. 32.) The Court treats the motion more narrowly as a motion for award of attorney fees under the Equal Access to Justice Act. The showing of Government bad faith in the later attempts to bootstrap new grounds into the original denial of clearance is substantial. However, the additional attorney fees occasioned by that bad faith are modest. In the Court's discretion, that motion will be denied. The Court will be alert to any future bad faith.

IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss (Doc. 30) is denied.

IT IS FURTHER ORDERED that the Clerk of the Court enter judgment in favor of Plaintiff Alberto Rodriguez against Defendants in their official capacity that the September 10, 2016 denial of Plaintiff's security clearance (Doc. 1-2 at 1-2), Acting Port Director Jason West's October 7, 2016 order denying Plaintiff's appeal (Doc. 1-4 at 1), and Director of Field Operations William K. Brooks's November 8, 2016 order denying Plaintiff's further appeal (Doc. 1-6 at 1) are reversed as invalid and his application is remanded for further action consistent with this Order.

IT IS FURTHER ORDERED that Plaintiff's Motion for an Order to Show Cause Why Defendants Should Not Be Held in Civil Contempt (Doc. 32), treated as a motion for award of attorney fees under the Equal Access to Justice Act, is denied.

IT IS FURTHER ORDERED that this Court retains jurisdiction to decide any further judicial review proceedings that may be brought from proceedings on remand.

Dated this 24th day of August, 2018.

_____
Neil V. Wake
Senior United States District Judge